UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHRISTOPHER WALTERS,

                    Plaintiff,

          -against-                                    6:21-CV-1115 (LEK/ATB)

FISCHER SKIS U.S., LLC,

                    Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

### I.      INTRODUCTION

Plaintiff Christopher Walters, a resident of Utica, New York, brings a claim against Defendant Fischer Skis U.S., LLC, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–89. Dkt. No. 14 ("Amended Complaint") ¶¶ 1, 11. Plaintiff filed the Amended Complaint on December 15, 2021. See generally Am. Compl. Plaintiff alleges that Defendant failed to make its digital platform accessible to legally blind individuals, in violation of the effective communication and equal access requirements of Title III of the ADA. Id. ¶ 1.

Now before the Court is a motion to dismiss brought by Defendant under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed on December 29, 2021. Dkt. No. 15 ("Motion"). Plaintiff opposes the Motion in his response, filed on January 19, 2022. Dkt. No. 17 ("Response"). On January 26, 2022, Defendant filed a reply. Dkt. No. 18 ("Reply"). For the following reasons, Defendant's Motion is denied.

### II.     BACKGROUND

Plaintiff alleges he is blind and is therefore a member of a protected class under the ADA. Am. Compl. ¶ 11; 42 U.S.C. § 12102(2); 28 C.F.R. § 36.101. He is a resident of Utica,

New York. Am. Compl. ¶ 11. Plaintiff asserts he has been skiing since he was fifteen years old, is a past member of the United States Association for Blind Athletes ("USABA"), skis in New York and Vermont, and plans to ski in 2022. Id. ¶ 26. Further, Plaintiff alleges he has typically gone skiing at least once a year over the course of the last decade and visited Defendant's digital platform to upgrade his ski equipment before another trip. Id.

Defendant manufactures, distributes, and sells ski equipment and has a principal place of business in New Hampshire. Id. ¶ 12. Consumers may use Defendant's digital platform to purchase products, access brand-related content, contact customer service, sign up to receive product news and promotions, and review legal notices, among other things. Id. ¶¶ 13–14.

As noted above, Plaintiff asserts he has a visual disability. Id. ¶ 11. Visually impaired individuals may access digital content through the assistance of screen-reader software, which "translates the visual internet into an auditory equivalent." Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365, 374 (E.D.N.Y. 2017). "Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." Id. Here, Plaintiff alleges barriers to accessibility, including the lack of an auditory confirmation message when adding items to a digital shopping cart, an inability to use a screen-reader on the website to compare products, and an inability to use a screen-reader to hear content in pop-up charts. Am. Compl. ¶ 27.

As a result, Plaintiff claims he was injured when he accessed Defendant's digital platform from his home while attempting to purchase new ski equipment. Id. ¶ 20. Specifically, he alleges that Defendant's digital properties do not allow visually impaired users equal access to content, and, therefore, blind users such as Plaintiff are "deprived [of] accessing [product] information."

Id. ¶ 9. Additionally, he asserts the accessibility barriers "deter him from attempting to use the Digital Platform to buy Defendant's goods and services." Id. ¶ 28.

Plaintiff seeks a declaratory judgment that "at the commencement of this action Defendant was in violation of the specific requirements of . . . the ADA . . . in that Defendant took no action that was reasonably calculated to ensure that its Digital Platform was fully accessible to, and independently usable by, individuals with visual disabilities[.]" Id. at 13. Plaintiff seeks a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a) to direct Defendant to bring its digital platform into compliance with the ADA and to allow this Court to continue monitoring Defendant's corporate policies to ensure that its digital properties remain accessible to individuals with visual disabilities. Id. at 13–14. To ensure that a digital platform has been made and remains accessible, Plaintiff contends: "[T]he digital platform must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals." Id. ¶ 17. Plaintiff also seeks payment of costs of suit and payment of reasonable attorneys' fees, including the costs of monitoring Defendant's compliance with a judgment. Id. at 14.

### III.    LEGAL STANDARD

Under Rule 12(b), "a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction . . . [and] (6) failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(1), 12(b)(6).

According to the Second Circuit, to bring "standing challenges . . . the proper procedural route is a motion under Rule 12(b)(1)." All. for Env't Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006). This is because standing is a threshold issue; in other words, "before a federal court can consider the merits of a legal claim, the person seeking to invoke the

jurisdiction of the court must establish the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990). To assess standing, the Court begins its analysis with Article III of the Constitution, which the Supreme Court has interpreted as limiting federal judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2. To establish standing under Article III, a plaintiff must demonstrate that a "case or controversy" exists. Gladstone, Realtors v. Bellwood, 441 U.S. 91, 99 (1979); see also All. for Env't Renewal, Inc., 436 F.3d at 85 ("An important component of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies' is standing."); Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.").

Article III standing is "the personal interest that must exist at the commencement of the litigation." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 55 (2d Cir. 2016) (quoting Davis v. FEC, 554 U.S. 724, 732 (2008)). A court "properly dismisses a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Tasini v. New York Times Co., 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). The Supreme Court has stated that three elements must be met to demonstrate Article III standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not conjectural or hypothetical[.]" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992) (footnote omitted)

(citations omitted) (cleaned up). "The party invoking federal jurisdiction bears the

burden of establishing these elements." <u>Id.</u> at 561.[1]

 To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts

to state a claim to relief that is plausible on its face" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

570 (2007). A claim is plausible on its face when a plaintiff pleads facts sufficient to allow a

court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). "[T]he pleading

standard . . . does not require 'detailed factual allegations,' but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678 (quoting

<u>Twombly</u>, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556

U.S. at 884. "A court considering a motion to dismiss under Rule 12(b)(6) must 'accept as true

all factual statements alleged in the complaint and draw all reasonable inferences in favor of the

non-moving party.'" <u>Abreu v. City of New York</u>, 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009)

---

[1] There are two types of challenges to Article III standing: "A Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction can be either a facial attack or a factual attack." <u>Russo v. City of Hartford</u>, 184 F. Supp. 2d 169, 178 (D. Conn. 2002). Courts distinguish between the two: "A facial attack merely questions the sufficiency of the pleading. When a defendant raises a facial attack to subject matter jurisdiction, the court takes the allegations in the complaint as true and draws all inferences in favor of the non-movant. When a court reviews a complaint under a factual attack for lack of subject matter jurisdiction, it must determine whether the factual predicate for subject matter exists." <u>Id.</u> (internal citations omitted). Under a factual attack, "there is no presumptive truthfulness to the facts alleged in the complaint, and the court may consider evidentiary matter presented in an affidavit or otherwise in addition to the complaint." <u>Id.</u> Here, this Court must take all allegations as true because this case presents a facial attack, where Defendant's motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . ." <u>Katz v. Donna Karan Co. Store</u>, 872 F.3d 114, 119 (2d Cir. 2017) (quoting <u>Carter</u>, 822 F.3d at 56).

(quoting Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104, 115
(2d Cir. 2008)).

## IV.   DISCUSSION

Defendant asserts two grounds for dismissal of Plaintiff's claims in the Motion to
Dismiss: (1) that, pursuant to Rule 12(b)(1), Plaintiff lacks Article III standing; and (2) that,
pursuant to Rule 12(b)(6), the complaint fails to "[state] a claim upon which relief may be
granted" because Defendant's website "is not a place of public accommodation" under the ADA.
Mot. at 1.

### A.  Article III Standing

"When a defendant 'moves for dismissal under Rule 12(b)(1), as well as on other
grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the
complaint for lack of subject matter jurisdiction, the accompanying defenses and objections
become moot and do not need to be determined.'" Fair Hous. Justice Ctr., Inc. v. Cuomo, No.
18-CV-3196, 2019 U.S. Dist. LEXIS 170119, at *13 (S.D.N.Y. Sept. 30, 2019) (quoting U.S. ex
rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1155–56 (2d Cir. 1993))
(internal citation and quotation marks omitted). Defendant argues in favor of dismissal for lack
of standing under Rule 12(b)(1) "because [Plaintiff] has not alleged a particularized injury in fact
or a specific purpose for visiting the website." Mot. at 3 (emphasis omitted).

"[I]n a civil rights case—particularly one under the ADA—a 'broad view of
constitutional standing' is appropriate because 'private enforcement suits are the primary method
of obtaining compliance with the Act.'" Baker v. N.Y. State Dep't of Env't Conservation, No.
10-CV-1016, 2012 U.S. Dist. LEXIS 86845, at *8 (N.D.N.Y. June 22, 2012) (quoting Chapman
v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 946 (9th Cir. 2011)). "Although plaintiffs have the

burden to establish the requisite injury-in-fact, they may do so through 'general factual allegations of injury resulting from the defendant's conduct' at the pleading stage." Baker, 2012 U.S. Dist. LEXIS 86845, at *8 (quoting Lujan, 504 U.S. at 561). "In the ADA context, [courts] have previously found standing (and therefore an injury in fact) where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that plaintiff intended to return to the subject location." Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187–88 (2d Cir. 2013) (citing Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (per curiam)).[2]

Those three "considerations may assist courts in determining whether an alleged prospective injury is sufficiently 'concrete and particularized.'" Calcano v. Swarovski N. Am. Ltd., No. 20-1552, 2022 U.S. App. LEXIS 15177, at *10 (2d Cir. June 2, 2022) (quoting Lujan, 504 U.S. at 560). "[T]he focus of the third factor—i.e., intent to return based on past visits and proximity—is to ensure that 'the risk of harm is sufficiently imminent and substantial' to establish standing." Calcano, 2022 U.S. App. LEXIS 15177, at *10–11 (emphasis in original) (quoting TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2210 (2021)). "[T]he central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the totality of all relevant facts,' the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" Calcano, 2022 U.S. App. LEXIS 15177, at *11 (cleaned up) (quoting Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1233 (11th Cir. 2021)). Among the elements to consider when assessing the third factor are the "definiteness of the plaintiff's plan to

---

[2] Defendant applies the Lujan standard when discussing standing, but does not address the three-prong Kreisler test for standing in ADA cases. Mot. at 4.

return . . . ." Calcano, 2022 U.S. App. LEXIS 15177, at *11 (quoting Kennedy, 998 F.3d at 1233).

Here, Plaintiff has alleged past injury by identifying the portions of the Defendant's website that lack accessibility. Am. Compl. ¶ 27. These include the "Remember" and "Compare" buttons, the cart confirmation window, and the "Freeride" product page. Id. A similar situation arose in Camacho v. Vanderbilt Univ., No. 18-CV-10694, 2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019). In Camacho, the court likewise found that a plaintiff sufficiently alleged "an injury under the ADA when he was unable to access certain portions of the [defendant's] Website's publicly available content because of his disability[,]" particularly when he was "unable to navigate the [defendant's] Website because its navigation tabs were incompatible with his screen-reading software . . . ." Id. at *26. Furthermore, both the plaintiff in Camacho and Plaintiff in this case allege that the access barriers "deter[red] [them] from accessing the website." Id.; Am. Compl. ¶ 28. "The Second Circuit has made clear that 'deterrence constitutes an injury under the ADA.'" Camacho, 2019 U.S. Dist. LEXIS 209202, at *26 (quoting Kreisler, 731 F.3d at 188). Therefore, the Court finds that Plaintiff has met the first prong of standing by alleging past injury under the ADA.

Turning to the second prong of ADA standing, the Court finds that it is reasonable to infer that the "discriminatory treatment would continue[.]" Kreisler, 731 F.3d at 188. The court in Camacho arrived at a similar conclusion. Camacho, 2019 U.S. Dist. LEXIS 209202, at *24. In that case, the plaintiff "allege[d] that he visited the Website on multiple occasions and ha[d] not been able to access its content." Id. at *26–27. The court found that the plaintiff's allegations "[support] an inference that the Website had not been altered to fix the barriers Plaintiff encountered, and that he will continue to be unable to access the Website." Id. at *24. Similarly,

8

in this case, it is reasonable to infer the discriminatory treatment will continue when Plaintiff visits the website again. Am. Compl. ¶ 27. Thus, Plaintiff satisfies the second prong of the test for standing in the ADA context.

Third, Plaintiff has evinced an intention to return to Defendant's website. Id. ¶ 28. Specifically, Plaintiff asserts that he "needs to update his ski gear and would like to, and intends to, attempt to access the Digital Platform in the future to research and potentially purchase products and explore the services [offered] . . . in advance of his next ski trip." Id. It is reasonable to infer, based upon Plaintiff's history as a skier and his interest in the sport, that he will plan another ski trip and will return to the site to purchase new equipment. Id. ¶ 26. Further, Plaintiff "will return to Defendant's Digital Platform on a regular basis, and at least annually, to check it for compliance with the ADA." Id. ¶ 28.

Another district court in this Circuit faced an analogous situation when determining standing. See Monge v. 405 Hotel, LLC, No. 19-CV-0451, 2021 U.S. Dist. LEXIS 36039 (E.D.N.Y. Feb. 24, 2021), report & recommendation adopted, 2021 U.S. Dist. LEXIS 49745 (E.D.N.Y. Mar. 15, 2021). The plaintiff, who suffered from cerebral palsy and used a wheelchair, brought a claim under the ADA for temporary and permanent injunctive relief, alleging that the defendant's website lacked compliance with the ADA under 28 C.F.R. § 36.302. Id. at *4. Plaintiff "allege[d] he was planning a beach vacation . . . and was unable to determine if he could book a room at [a] Hotel because of a lack of information regarding accessibility on the Hotel Website." Id. at *17–18. The court found: "a 'plausible intention or desire does not require a specific date for plaintiff's return to the . . . website . . . . Plaintiff's statements that he would return to the website in the future to assess whether he could make a reservation' are sufficient to confer standing." Id. at *16–17 (quoting Gonzalez v. Bahar Corp., No. 19-CV-575,

9

2019 U.S. Dist. LEXIS 58567, at *6–7 (E.D.N.Y. Apr. 3, 2019)). Likewise, here, Plaintiff's

intent to return to Fischer Skis' website to purchase ski equipment is sufficient, even without

providing a date of a ski trip.[3] Am. Compl. ¶ 28. When making its determination, the Court

assesses the "totality of all relevant facts," including Plaintiff's experience as a long-time skier,

which reveals a "definiteness of the plaintiff's plan to return . . ." to purchase new ski equipment.

Calcano, 2022 U.S. App. LEXIS 15177, at *11 (quoting Kennedy, 998 F.3d at 1233). Thus,

Plaintiff meets the third prong of the test to confer standing in the ADA context.

 Based upon the foregoing, Plaintiff satisfies the three-prong test to sufficiently

demonstrate the Article III standing required to bring an ADA claim. See Kreisler, 731 F.3d at

187–88. Accordingly, Defendant's 12(b)(1) Motion to Dismiss is denied.

### B. Public Accommodation Under the ADA

 The second issue in this case is whether Plaintiff's Complaint states a plausible claim for

relief under Title III of the ADA. To state a claim under Title III of the ADA, a plaintiff must

allege three elements: "(1) that [he] is disabled within the meaning of the ADA; (2) that

defendants own, lease, or operate a place of public accommodation; and (3) that defendants

discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services

defendants provide." Camarillo, 518 F.3d at 156; see also 42 U.S.C. § 12182(a) ("No individual

shall be discriminated against on the basis of disability in the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, or accommodations of any place of public

---

[3] "[W]hen challenging ADA violations on a website, a plaintiff must allege a specific and individualized reason for accessing and using the website in order to allege a past or future injury for standing purposes." Laufer v. Dove Hess Holdings, LLC, No. 20-CV-00379, 2020 U.S. Dist. LEXIS 246614, at *34 (N.D.N.Y. Nov. 18, 2020). Here, Plaintiff—a long-time skier who continues to ski regularly—has alleged a specific and individualized purpose for accessing Defendant's website—to purchase ski equipment—and has therefore demonstrated a "past, concrete, particularized injury in fact." Id. at *48; Am. Compl. ¶¶ 26, 28.

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."). Among other things, discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." 42 U.S.C. § 12182(b)(2)(A)(iii).

Public accommodations listed in the ADA include "(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment . . . ." 42 U.S.C. § 12181(7)(e). Title III of the ADA affords individuals with disabilities the same opportunities as non-disabled people by requiring that public accommodations "ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c). "As a remedial statute, 'the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" Nat'l Fed'n of the Blind v. Scribd, Inc., 97 F. Supp. 3d 565, 573 (D. Vt. 2015) (quoting Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 160 (2d Cir. 2013)).

Here, Plaintiff satisfies the first prong of Camarillo, 518 F.3d at 156, because he has alleged that he is disabled under the ADA by asserting he is blind. Am. Compl. ¶ 11; see 42 U.S.C. § 12102 (explaining that a "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual," and a major life activity includes "seeing").

Whether Plaintiff satisfies the second prong of Camarillo, 518 F.3d at 156, turns on whether Defendant's website constitutes a place of public accommodation.

Defendant invokes the canon of *ejusdem generis*[4] to assert a website is not a place of public accommodation enumerated in the ADA. Mot. at 7–8. Defendant cites to Winegard v. Newsday LLC, 556 F. Supp. 3d 173 (E.D.N.Y. 2021) in support of its argument. Mot. at 8. Winegard applied the principles of "*ejusdem generis* and *noscitur a sociis*"[5] to find that "a 'public accommodation' is . . . 'limited to actual, physical places.'" 556 F. Supp. 3d at 179 (emphasis in original) (internal citations omitted). Defendant argues that because most of the public accommodations under the ADA are brick-and-mortar establishments, a physical presence is required for a website to be a place of public accommodation. Mot. at 7–8. Defendant asserts that the company "does not operate any retail establishments; it only sells its products through third party retailers." Mot. at 8 n.3. However, immediately after this statement, Defendant concedes that a "small number of products on the website . . . can be purchased by a consumer . . . ." Id.

Other district courts in this Circuit have applied the Second Circuit decision Pallozzi v. Allstate Life Ins. Co. to find that websites constitute a public accommodation under the ADA. See 198 F.3d 28, 33 (2d Cir. 1999); see also Scribd, 97 F. Supp. 3d at 571 (finding with regard to public accommodations under the ADA that "[i]t seems likely that making websites compatible with screen reader software is the kind of advanced technology Congress was envisioning"); Del-Orden v. Bonobos, Inc., No. 17-CV-2744, 2017 U.S. Dist. LEXIS 209251, at *10 (S.D.N.Y.

---

[4] "[W]hen a statute sets out a series of specific items ending with a general term, that general term is confined to governing subjects comparable to the specifics it follows." Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 586 (2008).

[5] "The maxim of *noscitur a sociis* provides that individual items appearing in a list should be read to share common attributes." Winegard, 556 F. Supp. 3d at 179 n.12 (emphasis in original). "When an enumerated item in a statutory list has multiple definitions, the word should be read according to the definition most similar to the nearby words' meanings." Id.

Dec. 20, 2017) (noting <u>Pallozzi</u> "strongly suggests" that "the ADA's prohibition on discrimination in places of 'public accommodation' extends to 'places' on the Internet or to the online services of real-world public accommodations").

Plaintiff relies extensively on <u>Scribd</u>, in which the court applied <u>Pallozzi</u> to find a defendant's website to be a public accommodation. Resp. at 11–12; <u>Scribd</u>, 97 F. Supp. 3d at 575. In that case, the court denied the defendant's 12(b)(6) motion to dismiss for failure to state a claim, finding that "Scribd owns, leases, or operates a place of public accommodation." <u>Scribd</u>, 97 F. Supp. 3d at 576. The court in <u>Scribd</u> addressed the distinction between a digital platform and a brick-and-mortar store, noting that the legislative history of the ADA indicated "that the location of the discrimination is not as important in assessing the reach of Title III as the context in which it is occurring." <u>Id.</u> at 574. The court then "determine[d] whether the services [the defendant] offer[ed] properly fall within any of the general categories of public accommodations listed in the [ADA] statute." <u>Id.</u> at 576.

This Court agrees with the assertion that the ADA "was meant to guarantee [disabled individuals] more than mere physical access." <u>Pallozzi</u>, 198 F.3d at 32. Considering consumers' increased reliance on the Internet, particularly for the purchase of goods online, it is reasonable to conclude that Congress "intended that the [ADA] be responsive to changes in technology, at least with respect to available accommodations." <u>Scribd</u>, 97 F. Supp. 3d at 574.[6]

In holding that Title III of the ADA applies to a digital library subscription service accessible only via the Internet, the <u>Scribd</u> court interpreted Congress's Committee Reports to suggest that "the important quality public accommodations share is that they offer goods or

---

[6] "'[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities . . . should keep pace with the rapidly changing technology of the times.'" <u>Scribd</u>, 97 F. Supp. 3d at 574 (quoting H.R. Rep. 101-485(II), at 108 (1990)).

services to the public, not that they offer goods or services to the public at a physical location."
Id. at 573–74. Indeed, when the ADA was enacted in 1990, Congress likely "had no conception
of how the Internet would change global commerce." Scribd, 97 F. Supp. 3d at 575. Still,
"Congress understood that the world around us would change and believed that the
nondiscrimination mandate contained in the ADA should be broad and flexible enough to keep
pace." Id. (quoting Achieving the Promises of the Americans with Disabilities Act in the Digital
Age—Current Issues, Challenges and Opportunities: Hearing before the H. Subcomm. on the
Constitution, Civil Rights, and Civil Liberties of the House Comm. on the Judiciary, 111th
Cong., 2d Sess. 111–95 (2010)). This Court agrees with Plaintiff's assertion that "failing to take
[the internet's] 'central' sweep into account would have the perverse effect of excluding
Americans living with disabilities from the Nation's economic life . . . ." Resp. at 12.

Moreover, other district courts throughout this Circuit have found that even standalone
websites fall within the statutory definition of a public accommodation under the ADA. See
Andrews, 268 F. Supp. 3d at 397 ("What if that business only opens a single location? Does the
business's website only need to be accessible to individuals who live close enough to the one
store so that it is possible they may shop there one day? What if the company shutters the store—
is it free to begin discriminating anew on its website? A rigid adherence to a physical nexus
requirement leaves potholes of discrimination in what would otherwise be a smooth road to
integration. It would be perverse to give such an interpretation to a statute intended to
comprehensively remedy discrimination."); Markett v. Five Guys Enters., LLC, No. 17-CV-788,
2017 U.S. Dist. LEXIS 115212, at *4–5 (S.D.N.Y. July 21, 2017) ("[T]he text and purposes of
the ADA, as well as the breadth of federal appellate decisions, suggest that defendant's website
is covered under the ADA, either as its own place of public accommodation or as a result of its

14

close relationship as a service of defendant's restaurants . . . ."); Del-Orden, 2017 U.S. Dist. LEXIS 209251, at *19 (finding that "the ADA separately is violated where failure to afford equal access to a website impairs the user's access to a traditional public accommodation, such as a merchant's brick-and-mortar stores" and that "[a] commercial website itself qualifies as a place of 'public accommodation' to which Title III of the ADA affords a right of equal access"). These decisions indicate that a brick-and-mortar presence is not necessary. Therefore, the Court rejects the Defendant's theory of the canon of *ejusdem generis* in this case.

The Court now turns to assessing whether Defendant's operations "properly fall within any of the general categories of public accommodations listed in the statute." Scribd, 97 F. Supp. 3d at 576. In this case, Plaintiff pleads that Fischer Skis "is a leader in the design, development, manufacture, and distribution of ski equipment, and similar products," Am. Compl. ¶ 12, and that "[c]onsumers may purchase Defendant's products and access other brand-related content and services at" Defendant's website, Am. Compl. ¶ 13. The Court finds that the sale of ski equipment and apparel can clearly be categorized under the ADA as a "sales or rental establishment" akin to a "clothing store . . . [or] shopping center . . . ." 42 U.S.C. § 12181(7)(e). Thus, the Court finds that Defendant's operations meet the categories of public accommodations under the ADA, as required by the second prong of Camarillo, 518 F.3d at 156.

Lastly, Plaintiff satisfies the third prong of Camarillo because he has alleged specific barriers to accessibility when he visited Defendant's website to purchase new ski equipment. Am. Compl. ¶ 27; see Camarillo, 518 F.3d at 156 (finding that a plaintiff "cannot experience 'full and equal enjoyment' of [a] defendant['s] services if she is unable to access the list of the services available to her").

For the foregoing reasons, this Court finds Plaintiff has plausibly pled that Defendant's website violated the ADA. As a result, the Court finds Plaintiff has stated a claim under Title III of the ADA upon which relief can be granted. Therefore, Defendant's Motion to Dismiss under Rule 12(b)(6) is denied.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss under Rule 12(b)(1) and 12(b)(6) (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED:       August 10, 2022
             Albany, New York

LAWRENCE E. KAHN
United States District Judge

16